# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

———————————————————————
:
JULIO FERNANDEZ; ET AL.,            :
        Plaintiffs,              :
                           :      Civ. No. 03-4846 (JAP)
            v.              :      **OPINION**
:
MAYOR BRIAN STACK; ET AL.,       :
        Defendants.          :
———————————————————————:

APPEARANCES

Louis A. Zayas
11 State Street
Hackensack, NJ 07601
(201) 489-3900
       Attorney for Plaintiffs Julio Fernandez and Rafael Fernandez

Patrick P. Toscano, Jr.
Picillo, Caruso & O'Toole, PC
371 FRANKLIN AVENUE
P.O. Box 570
Nutley, NJ 07110
(973) 243-9100
       Attorney for Police Officer Philip Fahy

Michael W. Cartelli
Mcdermott & Mcgee, LLP
75 MAIN STREET
P.O. Box 192
Millburn, NJ 07041-0192
(973) 467-8080
       Attorney for Detective Juan Loaces

Mark J. Semeraro
10 Furler Street
P.O. Box 209
Totowa, NJ 07512
973-785-4000
       Attorney for Detective McGuire

1

PISANO, District Judge.

Currently before the Court is a motion for summary judgment filed by Defendant Detective McGuire ("McGuire"), in which Defendants Detective Philip Fahy ("Fahy") and Detective Juan Loaces ("Loaces") join (collectively, "Defendants").  This Court has jurisdiction under 28 U.S.C. § 1331.  For the reasons discussed below, the Court grants Defendants' motions for summary judgment.

The Court notes that a number of procedural violations have been alleged by various of the parties.  The Court resolved to proceed on Defendants' motions and to consider Plaintiffs' Amended Complaint to be the operative complaint despite the procedural concerns raised. However, the Court notes that the Court considers a letter submitted by Plaintiffs on December 30, 2005 in response to an order of the Court to be the controlling enumeration of those claims that each Plaintiff wished to assert against each Defendant ("Plaintiffs' 12/30/05 Letter"), and that, except as otherwise addressed below, any claims asserted in the Amended Complaint that were not also asserted in Plaintiffs' 12/30/05 Letter are deemed withdrawn.  Finally, the Court notes that disposition of the motions was made exceedingly difficult by several of the parties' failures to file proper submissions.

## I. BACKGROUND

As the Court writes only for the parties, only those facts necessary to the analysis are set forth herein.  Plaintiff Rafael Fernandez and his wife are the sole shareholders of Club Monty, Inc.[1], a corporation that owns and operates a tavern and restaurant named Club Monty in Union

---

[1] The spelling of this Union City tavern is inconsistent in the parties' written submissions. The Court will refer to it as "Club Monty", which is the spelling employed by Plaintiffs' counsel.

City, New Jersey that is open to the general public.  Plaintiff Julio Fernandez is the brother of Rafael Fernandez.  This lawsuit arises out of a warrantless search of Club Monty conducted by employees of the Union City Police Department on October 14, 2001.  The Union City Police Department employees who conducted the search of Club Monty at issue include Defendants McGuire and Loaces.

McGuire and Loaces were searching Club Monty for an individual named Christian Munoz, an attempted murder suspect.  Earlier on October 14, 2001, Christian Munoz allegedly assaulted his step-father with a broken beer bottle, causing a significant and life-threatening injury, and fled the scene of the crime.  Jose Munoz, the brother of Christian Munoz and the son of the victim, witnessed the alleged assault.  Within one hour of the alleged assault, Jose Munoz notified the Union City Police that he had just seen Christian Munoz enter Club Monty.  Within minutes of Jose Munoz's spotting Christian Munoz, Detectives Loaces and McGuire and Jose Munoz together entered Club Monty to search for Christian Munoz.  Detectives Loaces and McGuire searched the main bar area, a VIP lounge, public restrooms, the kitchen, and the banquet hall.

At the time of the search on October 14, 2001, Julio Fernandez was a patron at Club Monty.  Shortly after the search, Julio Fernandez was arrested by Defendant Fahy for aggravated assault, resisting arrest, and disorderly conduct.  Julio Fernandez claims that unknown officers used excessive force on him and kicked and punched him in connection with that arrest.  Fahy filed an arrest report for the arrest of Julio Fernandez.  Fahy and Loaces each filed investigation reports pertaining to the events on October 14, 2001.

There is deposition evidence in the record that criminal charges were pressed against both

Rafael Fernandez and Julio Fernandez, and that each appeared at a Municipal Court in connection with those charges.  Apparently those charges ultimately were dismissed.

Plaintiffs allege in the Amended Complaint, and there is some deposition evidence, that some time after Julio Fernandez was released from jail on October 14, 2001 and after Rafael Fernandez and Julio Fernandez were arraigned on the criminal charges filed against them, Plaintiffs filed a complaint with the Internal Affairs Bureau ("IAB") of the Union City Police Department regarding the events on October 14, 2001.

Further, there is deposition evidence in the record that at some point after October 14, 2001, Alcohol Beverage Commission ("ABC") administrative proceedings were initiated against Club Monty.  There does not appear to be any evidence in the record regarding the ultimate outcome of such proceedings.

## II.  STANDARD OF REVIEW

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party

makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.  DISCUSSION

In the Amended Complaint, Plaintiffs assert claims for relief under 42 U.S.C. § 1983, 42 U.S.C. § 1986, and the New Jersey Constitution.

### A.  Constitutional Tort Under New Jersey's Constitution

In the Amended Complaint, Plaintiffs assert "Constitutional Tort Under New Jersey's Constitution" as a claim for relief.  In support of this claim, Plaintiffs allege that "[u]nder the New Jersey State Constitution the defendants are liable to the Plaintiffs for their constitutional violations as alleged herein" and that "Plaintiffs were deprived of their civil liberties as alleged herein secured under the Constitution of the State of New Jersey."  Am. Compl. ¶¶ 33-34. Plaintiffs did not include any discussion of any purported state constitutional causes of action in

5

Plaintiffs' 12/30/05 Letter.  Further, in no submission to the Court have Plaintiffs either articulated the specific state constitutional causes of action on which they might wish to rely or analyzed whether they are entitled to relief on such bases.

"It is the plaintiff's burden on a defendant's summary judgment motion to come forward with evidentiary materials in support of the plaintiff's affirmative claims."  *Morales v. Busbee*, 972 F. Supp. 254, 267 (D.N.J. 1997).  In opposing summary judgment, Plaintiffs had an obligation to set forth the causes of action they intend to pursue and explain why summary judgment should not be granted in Defendants' favor on those claims.  Plaintiffs, however, failed to indicate the precise state constitutional causes of action on which they rely.  Where Plaintiffs have not seen fit to do so, the Court will not sift through the various materials submitted in this litigation "in order to select certain state law causes of action for [P]laintiff[s] and then analyze whether the [P]laintiff[s] may be legally entitled to proceed to trial on such causes of action."  *Id.* "This court will not parse through [P]laintiff[s'] factual contentions and New Jersey case law" to find which state constitutional law claims may be available, and then determine the date of accrual, the statute of limitations, and the sufficiency of the factual and legal bases for each.  *Cf. id.* at 268.  Instead, because of the deficiencies discussed and particularly because Plaintiffs appear to have abandoned any such state constitutional law claims (*see* Plaintiffs' 12/30/05 Letter), the Court will consider Plaintiffs as pursuing only federal law claims except as otherwise specifically addressed below.

Accordingly, unless a claim is otherwise disposed of below, the Court hereby grants summary judgment to Defendants as to any and all state law claims in this case.

**B. 42 U.S.C. § 1986**

Section 1986 "creates a right to recover damages 'in an action on the case' brought within one year after the cause of action has accrued against every person who has knowledge of, and power to prevent, a [42 U.S.C.] § 1985 conspiracy, but neglects or refuses to act." *Burnett v. Grattan*, 468 U.S. 42, 45 n.5 (1984); *see* 42 U.S.C. § 1986 (2005).  In moving for summary judgment on this claim, Defendants argue that Plaintiffs' claims under 42 U.S.C. § 1986 is time-barred.  In response, Plaintiffs appear to voluntarily withdraw their claims based on § 1986. (Pltf.'s Br. at 32).

Section 1986 sets forth a statute of limitations for claims brought thereunder:  "But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986 (2005); *see also Starks v. City of Philadelphia,* No. 05-3352, 2005 WL 2850349, *2 (E.D. Pa. 2005) (noting that 42 U.S.C. § 1986 "provides for its own one year statute of limitations"); *D'Aurizio*, 963 F.Supp. at 386 (same).  All of Defendants' alleged conduct forming the basis of Plaintiffs' Complaint occurred on or before September 13, 2002 (*see*, *e.g.*, Am. Compl. ¶¶ 8, 26), and Plaintiffs did not initiate this action until October 14, 2003.  Thus, as acknowledged by Plaintiffs, Plaintiffs' § 1986 claim is barred by § 1986's one-year statute of limitations,[2] and this cause of action is hereby dismissed.

---

[2] To state a claim under § 1986, Plaintiffs must establish as a predicate a conspiracy to interfere with civil rights under 42 U.S.C. § 1985.  *See*, *e.g.*, *Robinson v. Fauver*, 932 F. Supp. 639, 646 (D.N.J. 1996); *Walter J. Mintz, Inc. v. State of Pennsylvania*, 99-1823, 1999 WL 387037, *2 (E.D. Pa. June 4, 1999) ("A Section 1986 claim can only be maintained along with a Section 1985 claim."); *D'Aurizio v. Palisades Park*, 963 F.Supp. 378, 386 (D.N.J. 1997) ("all claims under section 1986 are derivative in nature, requiring a valid underlying section 1985(3)").  The Court notes that, while certain of Plaintiffs' allegations refer to an alleged conspiracy (*see*, *e.g.*, Am. Compl. ¶ 26), Plaintiffs do not purport to state a cause of action under 42 U.S.C. § 1985 in their Amended Complaint or in Plaintiffs' 12/30/05 Letter, none of the

**C.  42 U.S.C. § 1983**

Section 1983 provides a cause of action for certain violations of civil rights.  To state a claim under § 1983, Plaintiffs must establish (1) that they were deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law.  42 U.S.C. § 1983 (2005); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see also D'Aurizio*, 963 F.Supp. at 383.  The "under color of state law" element does not appear to be in dispute, and the Court presumes it is present for the purposes of this disposition.  Plaintiffs allege deprivations of several rights secured by the Constitution; each alleged deprivation is discussed below.

> **1.  Rafael Fernandez's Unlawful Search & Seizure Claim Against Detective McGuire and Detective Loaces**

In the Amended Complaint, Plaintiffs allege that Rafael Fernandez was deprived of his right against unreasonable search and seizure by McGuire and Loaces[3] under the Fourth and Fourteenth Amendments to the United States Constitution in connection with the search of the

---

parties have briefed whether Plaintiffs have satisfactorily established a § 1985 conspiracy, and the record does not appear to support the existence of a § 1985 conspiracy.  Specifically, one element of a § 1985 claim is that a "plaintiff must prove that there was some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Morales v. Busbee*, 972 F. Supp. 254, 267  (D.N.J. 1997) (quotations and citations omitted). Plaintiffs have made neither any showing nor even any allegation in this regard.  Thus, the Court notes that, while Plaintiffs § 1986 claim must be dismissed because it is time-barred, Plaintiffs' failure to establish a § 1985 cause of action likewise would require the dismissal of Plaintiffs' § 1986 claim.  *See*, *e.g.*, *Robinson*, 932 F. Supp. at 646.

[3] Plaintiffs do not appear to assert this claim against Defendant Fahy.  *See, e.g.,* Plaintiffs' 12/30/05 Letter.  If Plaintiffs did intend to assert this claim against Defendant Fahy, Defendant Fahy would be entitled to summary judgment on this claim for the same reasons that McGuire and Loaces are as discussed herein.

kitchen and banquet room[4] of Club Monty.[5]  (Compl. ¶ 29(a)).  While the parties refer to this as a claim for "unlawful search and seizure", the Court notes that Rafael Fernandez does not complain of any seizure; rather, only a search is at issue.  McGuire and Loaces are entitled to summary judgment on Rafael Fernandez's unlawful search and seizure claim because exigent circumstances existed at the time of the search.  Because the Court concludes that exigent circumstances existed, the Court will not consider Defendants' other arguments in support of the legality of the search.[6]

The Fourth Amendment to the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST., amend. IV.  The Fourth Amendment prohibition on unreasonable searches and seizures is applicable to state officers by virtue of the Fourteenth Amendment.  *See, e.g., Hedges v. Musco*, 33 F. Supp. 2d 369 (D.N.J. 1999).

The police did not obtain a search warrant to search Club Monty.  However, a warrantless

---

[4] The parties alternatively refer to the "banquet room" as a "ballroom".

[5] In addition to the kitchen and banquet room, Plaintiffs allege that other areas of Club Monte were searched.  However, Plaintiffs have clarified that they allege that the searches of only the kitchen and banquet room were unlawful.  *See* Plaintiff's July 7, 2005 Opposition Brief at 1-3;  Plaintiffs' 12/30/05 Letter at 2.

[6] Defendants argue that Rafael's unlawful search and seizure claim must be dismissed for the following reasons:  (1) because Rafael Fernandez is a corporate shareholder of the corporate owner of Club Monty, Rafael Fernandez lacks standing to assert a claim premised upon a search of Club Monty; (2) no search warrant was required because the search was conducted in a public place; and (3) no search warrant was required because exigent circumstances existed at the time of the search.

entry will not violate the Fourth Amendment if it is supported by exigent circumstances.  *See Estate of Smith v. Marasco*, 31 F. 3d 497, 518 (3d Cir. 2003) (citing *Payton v. New York*, 445 U.S. 573 (1980)).  In determining whether exigent circumstances existed to support the search, a court must review "the facts and reasonably discoverable information available to the officers at the time they took their actions and in making this determination consider the totality of the circumstances facing them." *Estate of Smith*, 318 F.3d at 518.  Factors a court should consider in analyzing whether exigent circumstances existed include:  "(1) that a grave offense has been committed; (2) that the suspect sought is reasonably believed armed; (3) that a strong reason exists to believe that the suspect is on the premises; and (4) a likelihood that the suspect might escape if not caught quickly." *U.S. v. Jones*, 155 Fed. Appx. 62, 65 (3d Cir. 2005) (citing *Gov't of Virgin Islands v. Gereau*, 502 F.2d 914, 928 (3d Cir. 1974)); *see also U.S. v. Williams*, 612 F.2d 735, 739 (F.3d 1979) (addressing exigent circumstances analysis in "fleeing suspect" context).  A review of the record in light of these factors amply shows that there is no genuine issue as to the fact that exigent circumstances existed for the search of the allegedly private areas of Club Monty.

First, the officers involved in the search of Club Monty had probable cause to believe that Christian Munoz perpetrated a violent attack on his father within the hour prior to the commencement of the search.  Both the police reports completed contemporaneously and the deposition testimony of Jose Munoz indicate that the officers believed that they were searching for an attempted murder suspect.

Second, the officers were aware that the attacker of Christian Munoz's father employed a beer bottle as a weapon.  Jose Munoz, eyewitness to the attack, reported that he had just seen

Christian Munoz, the lead suspect, enter Club Monty within minutes of the officer's arrival at that establishment.  As Christian Munoz was reported to have employed a beer bottle in the attack on his father, it would have been reasonable for the police to assume that Christian Munoz had access to beer bottles inside Club Monty that could be employed as weapons.

Third, the officers had a very strong reason to believe that Christian Munoz was on the premises.  Christian Munoz's own brother, the eyewitness to the attack on their father, Jose Munoz, called the officers to inform them that he had just seen Christian Munoz enter Club Monty.  The officers arrived within minutes of Jose Munoz's tip and proceeded to block Club Monty's exits.  The officers met Jose Munoz at the scene.  Jose Munoz did not report seeing Christian Munoz leave Club Monty prior to the sealing of the of the exits.  Accordingly, the officers had a very strong reason to believe that Christian Munoz was inside Club Monty when they conducted the search.

Fourth, the officers reasonably believe that it was likely that Christian Munoz might escape if not apprehended quickly.  Christian Munoz had fled the scene of his reported attack on his father.  The officers had no reason to believe that Christian Munoz would remain in Club Monty indefinitely.  *Cf. Jones*, 155 Fed. Appx. at 66 ("The officers were aware that fugitives in serious cases would not remain indefinitely at any one location."); *Williams*, 612 F.2d 739 (indicating in support of finding of exigent circumstances that there was "no evidence to suggest that [the officers] had any reason to believe that they would have more than minutes to wait for the appellant's exit").  Further, given that a number of patrons and employees were inside Club Monty at the time the officers arrived, it may have been unreasonable for the officers to keep the exits sealed for a period of time sufficient to secure a warrant.

Finally, "[d]anger to either law enforcement or the general public is highly relevant in determining if there were exigent circumstances."  *Cf. Jones*, 155 Fed. Appx. at 66.  Given that Christian Munoz reportedly used a beer bottle to attack his father, that he presumably would have had access to beer bottles inside Club Monty, and that numerous patrons and employees were inside Club Monty when the officers arrived, it would have been reasonable for the officers to deduce that Christian Munoz posed a serious danger both to the officers and Club Monty's patrons and employees.

The fact that the officers did not apprehend Christian Munoz inside the Club Monty as a result of their search is not dispositive.  *See Jones*, 155 Fed. Appx. at 66.  The Court must view the totality of the facts known to and facing the officers at the time they made their search. *Estate of Smith*, 318 F.3d at 518.  In the instant case, the totality of the facts indicate that exigent circumstances existed at the time of the search.  Because exigent circumstances supported the search of the allegedly private areas of Club Monty, no search warrant was required. Accordingly, the Defendants' motions for summary judgment on Plaintiffs' unlawful search and seizure claim must be granted.

### 2. Julio Fernandez's Excessive Force Claim Against Police Officer Fahy

In the Amended Complaint, Plaintiffs allege that Julio Fernandez was deprived of his right against the use of excessive force secured under the Fourth and Fourteenth Amendments to the United States Constitution.  (Compl. ¶ 29(b)).  Plaintiffs plainly "do not allege that McGuire used excessive force on Julio Fernandez" (Pltf.'s Br. at 23), nor do they appear to allege that Loaces did so.  Further, the Court has identified no evidence in the record that would support an excessive force claim against Loaces or McGuire, and, therefore, Loaces and McGuire would be

entitled to summary judgment on this claim had Plaintiffs intended to allege it against them.

Fahy has not moved for summary judgment on this claim.

### 3.  Both Plaintiffs' Deprivation of Right of Access to Court Claims

In the Amended Complaint, Plaintiffs allege that both Plaintiffs were deprived of their right of access to court.  (Compl. ¶ 29(f)).  However,  Plaintiffs' 12/30/05 Letter clarifying the claims that Plaintiffs assert against the three Defendants, which was submitted in response to an order of the Court, contains no reference to this claim.  Accordingly, the Court understands Plaintiffs to have withdrawn any allegation of any deprivation of their right of access to the Court.  Further, the Complaint, the briefs, and the record do not contain any discussion or allegations pertinent to such a claim.  Accordingly, to the extent that Plaintiffs have not already withdrawn this claim, the Court dismisses it.

### 4.  Both Plaintiffs' Malicious Prosecution Claims Against All Defendants

In the Amended Complaint, Plaintiffs allege that both Plaintiffs were deprived of the right to be free from malicious prosecution secured under the Fourth Amendment to the United States Constitution when Defendants caused false police reports and criminal charges to be filed against Plaintiffs.  (Compl. ¶ 29(d); Pltf.'s 12/30/05 Letter at 2).  Defendants are entitled to summary judgment on Plaintiffs' malicious prosecution claims.

To succeed on a Fourth Amendment malicious prosecution claim under § 1983, Plaintiffs must show that "(1) [Defendants] initiated a criminal proceeding; (2) the criminal proceeding ended in [Plaintiffs'] favor; (3) the proceeding was instituted without probable cause; (4) [Defendants] acted maliciously or for a purpose other than bringing [Plaintiffs] to justice; and (5) [Plaintiffs] suffered a deprivation of liberty consistent with the concept of seizure as a

13

consequence of a legal proceeding."  *Shelley v. Wilson*, 152 Fed. Appx. 126, 129 (3d Cir. 2005);

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

    As an initial matter, McGuire is entitled to summary judgment on this claim as asserted

by either Plaintiff because there is no evidence that he "initiated" or actively participated in the

arrest or criminal prosecution of either Plaintiff.  The only evidence relating to McGuire is that

Rafael Fernandez allegedly overheard a conversation between McGuire and Lt. Richard Molinari

and that Julio Fernandez saw McGuire at court.  Specifically, while Plaintiffs allege that

McGuire participated in a "cover-up", in support of which Plaintiffs allege only that Rafael

Fernandez overheard a conversation between McGuire and Lt. Molinari (Pltf.'s Br. at 3-4),

Rafael Fernandez's actual testimony in this regard was:  "The conversation consisted of did you

see what they did, they did this, they did that.  And McGuire was just a yes, a yes, yes, yes, yes,

yes, yes.  Didn't respond to any no or any differences.  It was like putting words in McGuire and

you have to say yes, yes, yes, and that's all it was, that's it."  (Rafael Fernandez Tr. at 227:19-25).

Evidence of participation in a "cover-up" or otherwise in connection with commencement or

continuation of criminal proceedings against either Plaintiff simply cannot be gleaned from this

testimony.  In addition, Julio Fernandez testified that McGuire was present at Municipal Court in

Kearny, New Jersey, during times when Julio Fernandez appeared in connection with the

criminal charges filed against him.  (Julio Fernandez Tr. at 180:2-25 -181:1-12).  However,

McGuire never testified against Julio Fernandez and there is no evidence that he was at Court in

connection with the criminal case against Julio Fernandez, rather than some other case entirely.

There is no evidence that McGuire filed an investigation report, an arrest report, or charges in

connection with the events of October 14, 2001, actively encouraged the arrest or prosecution of

either Plaintiff, knowingly gave false information inculpating either Plaintiff, failed to disclose

material information, or otherwise had a role in initiating or continuing the criminal action.  *See*

*Morales v. Busbee*, 972 F. Supp. 254, 265-66 (D.N.J. 1997); *cf. Garcia v. Micewski*, No. CIV.A.

97-5379, 1998 WL 547246 (E.D. Pa. 1998).

"[I]nitiation of prosecution is a critical element in a malicious prosecution claim."

*Morales*, 972 F. Supp. at 265.  Because there is no genuine issue of material fact concerning any

role played by McGuire in the criminal proceedings against either Plaintiff, Plaintiffs have not

established the first element of their malicious prosecution claim against McGuire.  Accordingly,

McGuire is entitled to summary judgment on this claim.

Further, all three Defendants are entitled to summary judgment on this claim as asserted

by either Plaintiff because there is no evidence that either Plaintiff suffered a cognizable

deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding.  *See, e.g., Estate of Smith*, 318 F.3d at 521.

With respect to Rafael Fernandez, it appears that the record contains no evidence

indicating, and Plaintiffs have not even alleged, that Rafael Fernandez suffered any deprivation

of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  At most,

it appears that Rafael Fernandez may have appeared and testified at the Municipal Court in

Union City in connection with the criminal charges.  (*See* Rafael Fernandez Tr. at 236:23-25 -

237:1-2).  Such an appearance alone does not constitute a relevant seizure for purposes of a

malicious prosecution claim.  *See*, *e.g.*, *Dibella v. Borough of Beachwood*, 407 F.3d 599, 602 (3d

Cir. 2005) (dismissing malicious prosecution claim because "DiBella and McLaughlin were only

issued a summons; they were never arrested; they never posted bail; they were free to travel; and

they did not have to report to Pretrial Services; [t]heir liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions."); *Shelley*, 152 Fed. Appx. at 129 (finding that, for the purposes of a malicious prosecution claim under § 1983, "attendance at trial is not a seizure under the Fourth Amendment"); *Mantz v. Chain*, 239 F. Supp. 2d 486, 502-04 (D.N.J. 2002) (granting summary judgment in favor of defendants on malicious prosecution claim because plaintiff failed to establish a Fourth Amendment seizure as a result of legal process).  Because there is no genuine issue of material fact concerning whether Rafael Fernandez suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal process, Defendants are entitled to summary judgment on Rafael Fernandez's malicious prosecution claim.

With respect to Julio Fernandez, the record reflects that he was arrested without a warrant, incarcerated upon his arrest and released on bail, and that he appeared at a Municipal Court on his criminal charges on a number of occasions (*see*, *e.g.*, Julio Fernandez Tr. at 181: 3-20; 182:18-23; Certification of Mark Semeraro, Exs. A, F).  None of the foregoing constitutes a deprivation of liberty consistent with the concept of seizure as a consequence of a legal process. As noted above, merely appearing in court does not constitute a relevant seizure for purposes of a malicious prosecution claim.  *See*, *e.g.*, *Dibella*, 407 F.3d at 602; *Mantz*, 239 F. Supp. 2d at 503. Julio Fernandez's arrest and incarceration clearly constitute seizures within the meaning of the Fourth Amendment.  *See*, *e.g.*, *Mantz*, 239 F. Supp. 2d at 502.  However, "not all Fourth Amendment 'seizures' can serve as the basis for a malicious prosecution claim"  *Id.* at 501. Instead, because "malicious prosecution concerns the perversion of proper legal procedures, [plaintiff] must show that he suffered a seizure *as a consequence of a legal proceeding*."  *Id.*

16

(alterations in Mantz) (quotations and citations omitted).  The relevant legal process is typically

an arrest warrant or a charging document.  *Id.*  Here, Julio Fernandez's arrest was conducted

without a warrant and there is no evidence that either his arrest or incarceration postdated the

issuance of a charging document.  *Id.* (collecting cases and stating that plaintiff's arrest "was not

made pursuant to a warrant and occurred prior to filing of the criminal complaint, and cannot

therefore serve as the basis for his malicious prosecution claim").  Accordingly, based on the

record before the Court at summary judgment, the Court will grant Defendants' motions for

summary judgment on Julio Fernandez's malicious prosecution claim.  *Cf. Mantz*, 239 F. Supp.

2d at 501-04 (finding no seizure that could form the basis of a malicious prosecution claim where

plaintiff had been arrested without a warrant, had been discharged from incarceration on his own

recognizance, and was summoned to appear in court to answer the criminal charges against him).

Accordingly, Defendants' motions for summary judgment on both Plaintiffs' claims for

malicious prosecution are granted.

### 5.  Rafael Fernandez's Abuse of Process Claim Against All Defendants

Plaintiffs allege in the Amended Complaint that Rafael Fernandez suffered an abuse of

process when ABC administrative proceedings were initiated against Rafael Fernandez and Club

Monty.  (Compl. ¶¶ 29(e); Pltf.'s 12/30/05 Letter at 3).  Defendants are entitled to summary

judgment on Rafael Fernandez's abuse of process claim.

"Unlike malicious prosecution, which is illegitimate from its inception, an abuse of

process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose

other than that intended by the law."  *Mitchell*, 138 Fed. Appx. 502 (internal quotations and

citations omitted, alteration in *Mitchell*).  To establish a claim for abuse of process, Plaintiffs

must establish: "1) an ulterior motive and 2) some further act after an issuance of process

representing the perversion of the legitimate use of process." *Mosley v. Delaware River Port*

*Authority, J.P.*, No. 99-4147, 2000 WL 1534743, *9 (D.N.J. Aug. 7, 2000) (applying New Jersey

law); *Flyte Tyme Tunes v. Riggers & Razzles*, No. 87-4211,1988 WL 142403, at *4 (D.N.J. Dec.

20, 1988) (indicating that elements of abuse of process claim are: "(1) that [Defendants] have set

the legal process in motion for an improper purpose; and (2) that the [Defendants] have

committed a willful act in the use of process which perverts the regular conduct of the

proceeding to accomplish the improper purpose, such that resort to the legal process was neither

warranted to authorized by law") (applying New Jersey law).  Significantly, "there can be no

abuse of process without use[; i]f the process is not used at all no action can lie for its abuse."

*Ruberton v. Gabage*, 654 A.2d 1002, 1005 (N.J. Super. Ct. App. Div. 1995) (quotations and

citations omitted); *see also Mosley*, No. 99-4147, 2000 WL 1534743, *9 ("Process is not abused

unless after its issuance the defendant reveals an ulterior purpose he had in securing it by

committing further acts where by he demonstrably uses the process as a means to coerce or

oppress the plaintiff.").

    McGuire is entitled to summary judgment on Plaintiffs' abuse of process claim.  The

record contains no evidence whatsoever that McGuire had any role in initiating or continuing the

ABC proceedings.  *Cf. Mitchell*, 138 Fed. Appx. 502 (indicating that a plaintiff "must show

evidence of an act or threat not authorized by the process or aimed at an illegitimate objective" to

support an abuse of process claim).  Further, Plaintiffs fail even to allege factual basis for

asserting this claim against McGuire.  Because Plaintiffs have failed to establish any act by

McGuire in connection with Rafael Fernandez's abuse of process claim, McGuire is entitled to

18

summary judgment on this claim.  *Cf. Mosley*, No. 99-4147, 2000 WL 1534743, *9.

Further, Loaces and Fahy are also entitled to summary judgment on Rafael Fernandez's abuse of process claim.  In support of this claim against Loaces and Fahy, Plaintiffs allege only that Loaces and Fahy caused the ABC administrative proceedings to be initiated and continued and that Loaces, Fahy, and other police witnesses provided false and misleading testimony at the proceedings.  (Am. Compl. 25-27; Pltf.'s 12/30/04 Letter at 3).  The record is devoid of evidence that Loaces or Fahy had or, in light of the nature of such proceedings, even could have had any role in initiating the ABC administrative proceedings.  Further, the only evidence of any act conducted, or any role played, by Loaces and Fahy in connection with the ABC proceedings is deposition testimony indicating that Loaces and Fahy provided testimony at the ABC proceedings.  (*See* Rafael Fernandez Tr. at 241: 7-15).  However, even assuming *arguendo* that any such testimony was false, under circumstances such as those presented here, "[f]or the purposes of an abuse of process claim, 'process' does not include false testimony."  *Mosley*, No. 99-4147, 2000 WL 1534743, *9 (noting that "[p]rocess, for the purposes of 'abuse of process,' is narrower than the general use of the term. . . "); *see also Ruberton v. Gabage*, 654 A.2d 1002, 1005 (N.J. Super. App. Div.1995) (stating that, in the context of abuse of process, "'[p]rocess,' . . . refers to the abuse of procedural methods used by a court to acquire or exercise its jurisdiction over a person or over specific property.  This use of the term 'process' includes the summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders.") (quotations and citations omitted).

Accordingly, each of the Defendants is entitled to summary judgment on Rafael Fernandez's abuse of process claim.

**6.   Both Plaintiffs' Retaliation for Exercise of Free Speech Rights Claims Against All Defendants**

Plaintiffs allege in the Amended Complaint that both Plaintiffs were the victims of retaliatory action for exercising their rights to freedom of speech secured by the First and Fourteenth Amendments[7] when Defendants caused criminal charges to be filed against Plaintiffs after Plaintiffs complained to Defendants and to the Union City Police Department IAB about the search of Club Monty and the alleged use of force on Julio Fernandez and/or when ABC administrative proceedings were initiated against Rafael Fernandez and Club Monty.  (Compl. ¶¶ 29(c); Pltf.'s Br. at 28; Pltf.'s 12/30/05 Letter at 3).  Defendants are entitled to summary judgment on Plaintiffs' retaliation claims.

A First Amendment retaliation claim requires Plaintiffs to establish:  (1) that they engaged in protected activity; (2) that the Defendants responded with retaliation; and (3) that their protected activity was the cause of the Defendants' retaliation.  *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

As an initial matter, to the extent that Plaintiffs premise this claim on their complaints to IAB or on the ABC administrative proceedings, summary judgment must be granted in Defendants' favor.  First, although as stated Plaintiffs' retaliation claim is premised upon two alleged retaliatory acts by Defendants, namely that Defendants allegedly caused criminal charges to be filed against Plaintiffs and initiated ABC administrative proceedings against Rafael

_____

[7] In the Amended Complaint, Plaintiffs allege that they were deprived of their right to free speech and in the alternative that they were victims of retaliatory action for exercising that right. However, in their subsequent submissions to the Court, Plaintiffs clarify that this is not a claim for deprivation or restraint of exercise of First Amendment rights, but rather only for retaliation in response to their exercise of their First Amendment rights.  (*See*, *e.g.*, Pltf.'s Br. at 20-21; Pltf.'s 12/30/05 Letter at 3).

Fernandez and Club Monty, as discussed above, the record is devoid of any evidence that any of the three Defendants had or, in light of the nature of such proceedings, even could have had any role in initiating the ABC administrative proceedings.  Accordingly, the only alleged retaliatory act on which Plaintiffs' retaliation claim could be premised is the filing of criminal charges. Further, although as stated Plaintiffs' retaliation claim is premised upon two alleged protected activities, namely their alleged complaints to Defendants and their alleged complaints to the Union City Police Department IAB, as indicated above, Plaintiffs' own Amended Complaint indicates that their complaint to the Union City Police Department IAB were made *after* the criminal prosecutions against Plaintiffs were initiated and Plaintiffs were arraigned.  (See Compl. ¶ 23).  Because the alleged protected activity, Plaintiffs' complaint to the Union City Police Department IAB, does not precede the alleged retaliatory act, the filing of criminal charges against Plaintiffs, it cannot serve as the predicate for a retaliation claim.  *See*, *e.g.*, *Anderson*, 125 F.3d at 161-63.

Further, even to the extent that Plaintiffs premise this claim upon the filing of criminal charges against Plaintiffs after Plaintiffs allegedly made complaints to Defendants at the scene, summary judgment must be granted in Defendants' favor.  Here, Plaintiffs have failed to provide any factual basis for their claims because they were not arrested for expressing their views, but because the police officers had probable cause to believe they acted unlawfully as described in the investigation and arrest reports contained in the record.  *Cf. Pulice v. Enciso*, 39 Fed. Appx. 692, 696 (3d Cir. 2002) (affirming summary judgment on retaliation claim because plaintiff failed to provide a factual basis where plaintiff "was not arrested for expressing her views, but because she and her husband *acted* unlawfully when they physically obstructed the Gas

21

Company's right of way") (emphasis in *Pulice*).

Finally, as an alternative basis for the Court's decision with respect to the claims as asserted against McGuire, the Court notes that McGuire is entitled to summary judgment because there is no evidence in the record that McGuire had any role in any alleged response.  As discussed in connection with other claims asserted by Plaintiffs, there is no record evidence that McGuire had any involvement whatsoever in any aspect of Plaintiffs' criminal cases or even in the ABC administrative proceeding.  Accordingly, because there is no genuine issue that McGuire did not respond with retaliation against either Plaintiff, McGuire is entitled to summary judgment on this claim.

Accordingly, each of the Defendants is entitled to summary judgment on Plaintiffs' retaliation claims.

### 7.  Both Plaintiffs' Failure to Intervene Claims Against All Defendants

In the Amended Complaint, Plaintiffs allege that Defendants who did not actively participate in the other alleged violations are liable for failing to prevent such violations.[8] (Compl. ¶ 29(d)).  In Plaintiffs' 12/30/05 Letter, Plaintiffs clarify that the alleged primary violations on which they seek to predicate their failure to intervene claims are the alleged malicious prosecution, abuse of process, and retaliation, discussed above.  (Plaintiffs' 12/30/05 Letter).  Because the Court has determined that Defendants are entitled to summary judgment on

---

[8] To establish a police officer's failure to intervene to prevent police officer's constitutional violation under § 1983, a plaintiff must establish that:  (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene."  *See Smith v. Mensinger*, 29 F.3d 641, 650-51 (3d Cir. 2002); *see also Boston v. New Brunswick Police Dep't*, No. 04-5921, 2005 WL 1661582, at *3 n.2 (D.N.J. 2005).

Plaintiffs' claims for each of malicious prosecution, abuse of process, and retaliation, each of the Defendants is entitled to summary judgment on Plaintiffs' failure to intervene claims.

## IV. CONCLUSION

For the reasons expressed above, the Court grants all three Defendants' motions for summary judgment. For clarification, in light of the disposition of Plaintiffs' claims as discussed above, the only claim surviving summary judgment is Julio Fernandez's excessive force claim against Fahy, on which Fahy did not move for summary judgment. An appropriate order will issue.

s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

DATED: March 27, 2006

23